UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-80914-CIV-Cohn/Matthewman
(18-80195-CR-COHN)

XAVIER DAVIS,

      Movant,

vs.

UNITED STATES OF AMERICA,

      Respondent.

_____/

FILED BY _____KJZ_____ D.C.

*May 4, 2021*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION SUBSEQUENT TO EVIDENTIARY HEARING ON GROUND ONE OF PETITIONER'S FINAL AMENDED PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2255 [DE 11]

THIS CAUSE is before the Court upon the Order of Referral [DE 17] to conduct an evidentiary hearing and submit a Report and Recommendation as to Ground One of Petitioner/Movant, Xavier Davis' ("Movant") Final Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2255 ("the Petition") [DE 11]. Movant has filed an affidavit in support of the Petition [DE 13], and the Government has filed its response to the Petition [DE 15].

On April 14, 2021[1], the Court held an evidentiary hearing via Zoom video teleconference

---

[1] The Court first set the evidentiary hearing for January 28, 2021, but the hearing had to be moved to April 6, 2021, due to COVID-19 related logistical issues at Coleman FCI, where Movant is currently incarcerated. The Court then attempted to hold the evidentiary hearing on April 6, 2021, but personnel at Coleman had technological issues and were unable to access Zoom. Ultimately, the Court had Movant brought to the West Palm Beach Federal Courthouse to appear remotely from the U.S. Marshal's cellblock at the hearing that took place on April 14, 2021, and April 22, 2021.

1

(VTC) to determine (1) whether Movant, in fact, asked his attorney to file a direct appeal, and (2) whether, if Movant failed to request counsel to file an appeal, counsel fulfilled his constitutional duty to advise Movant of the advantages and disadvantages of filing an appeal. Then, on April 22, 2021, the Court held a continuation of the evidentiary hearing via Zoom VTC and heard oral argument from counsel for Movant and for the Government.

The Court has reviewed and carefully considered the Petition, the affidavit, the Government's response, the testimony and evidence introduced at the evidentiary hearing, the credibility of the witnesses, the argument heard on April 22, 2021, and all pertinent portions of the underlying criminal file and related civil file.

## I.      BACKGROUND

### a)   Course of Proceedings in the Criminal Case, 18-cr-81095-Cohn

Movant was initially indicted on October 6, 2017 in this district on charges of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count 1), and possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2). [Cr-DE 1]. Movant had his initial appearance on October 10, 2018, after a Writ of Habeas Corpus Ad Prosequendum was executed and he was brought over from the Palm Beach County Jail. [Cr-DEs 3, 4, 5].

The Federal Public Defender was initially appointed to represent Movant, but Gregg Lerman, Esq., filed a Notice of Appearance as retained counsel on October 17, 2018. [Cr-DEs 5, 7, 10]. On October 17, 2018, Movant again appeared in court. [Cr-DE 11]. The Federal Public Defender made an *ore tenus* motion to withdraw due to the permanent appearance of Mr. Lerman being entered. [Cr-DE 11]. The Court confirmed Movant's desire to retain Mr. Lerman in this case and granted the *ore tenus* motion of the FPD to withdraw. [Cr-DE 11]. Movant waived a formal

reading of the Indictment, entered a plea of not guilty, demanded a jury trial and requested that the standing discovery order be issued. [Cr-DE 11]. Additionally, the Government requested pretrial detention, and Movant stipulated to pretrial detention with the right to revisit at a later date. [Cr-DEs 11,13].

On December 20, 2018, a grand jury returned a Superseding Indictment against Movant. [Cr-DE 23]. The Superseding Indictment included charges of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Counts 1, 3, 4, 6, 8, 10 and 12), and possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 2, 5, 7, 9, 11, and 13). [Cr-DE 23]. Movant pled not guilty at his arraignment on January 11, 2019, to the charges contained in the Superseding Indictment. [Cr-DE 24].

On March 5, 2019, Movant changed his plea and entered a guilty plea as to Counts 1, 4, 8, 10, 12, and 13 of the Superseding Indictment. [Cr-DEs 35, 36, 38, 39]. In exchange for Movant's guilty plea, the Government agreed to dismiss Counts 2, 3 5, 6, 7, 9, and 11. [Cr-DE 38]. The plea agreement specifically stated that, by signing the plea agreement, Movant was acknowledging that he had discussed the appeal waiver set forth in the agreement with his counsel and further agreed, together with the United States, to request that the Court enter a specific finding that Movant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary. [Cr-DE 38].

Both the Government and Movant objected to the Presentence Investigation Report. [Cr-DEs 44, 47]. On June 14, 2019, Movant also filed a Motion for Variance/Departure [Cr-DE 54]. The sentencing hearing was held on June 19, 2019, at which time the Motion for Variance/Departure was granted. Movant was sentenced to 66 months in prison as to Counts 1, 4,

8, 10 and 12 of the Superseding Indictment to all run concurrently with each other, and 84 months in prison as to Count 13 of the Superseding Indictment to run consecutively to Counts 1, 4, 8, 10, and 12. [Cr-DEs 56, 57]. Movant's total prison sentence was therefore 150 months. Movant was also sentenced to a three-year term of supervised release as to Counts 1, 4, 8, 10 and 12, and a five-year term of supervised release as to Count 13 to all run concurrently with each other. [Cr-DEs 56, 57]. Finally, the Court ordered a $600 special assessment and $11,132.03 in restitution. [Cr-DEs 56, 57]. The Government's *ore tenus* motion to dismiss the remaining counts was granted. [Cr-DEs 56, 57]. The Judgment and Conviction was docketed on June 19, 2019. [DE 57].

No direct appeal was ever filed by Movant.

### b)  Post-Conviction Motion

Movant filed his original post-conviction motion in this civil case on June 9, 2020—a Motion under 18 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Cv-DE 1]. This was the first post-conviction motion filed by Movant. He filed his Final Amended § 2255 Petition [Cv-DE 11], which is the Petition at issue in this Report and Recommendation, on July 17, 2020. The Petition was filed *pro se*, but the Court appointed counsel for Movant on November 18, 2020 when it set the evidentiary hearing. [Cv-DE 18].

## II.  SUMMARY OF THE PARTIES' ARGUMENTS

In his pending Petition, Movant asserts four separate grounds for relief. [Cv-DE 11]. In summary, he argues, *inter alia*, that his counsel was ineffective for not pursuing a direct appeal when Movant made a request for a direct appeal (Ground One); that he is actually innocent of Hobbs Act Robbery based on violations of his Fifth Amendment Right to liberty (Ground Two); that an illegal search and seizure of his cell phone and data violated his Fourth Amendment rights

4

(Ground Three); and that he is a mentally ill patient with an I.Q. level of 60 or below (Ground Four). [Cv-DE 11, pp. 4-10]. The direct appeal issue contained in Ground One is the only ground for relief currently referred to the undersigned per the referral order at Docket Entry 17.

Movant filed an affidavit [Cv-DE 14] to support his argument that he had requested that his counsel file a direct appeal. He avers that, immediately after his sentencing, he asked his trial counsel to appeal his case. *Id.* at p. 2. According to Movant, his counsel told him that he had nothing to appeal because he had waived his right to appeal; counsel then refused to file a notice of appeal. *Id.* at p. 3. Movant's parents asked trial counsel to file a notice of appeal several days later, and he again refused to do so. *Id.* at p. 4.

In its response [DE 15], the Government rejects each of Movant's claims. It contends that Movant "waived his right to contest all non-jurisdictional defects and defenses when he entered into a knowing and voluntary guilty plea." *Id.* at p. 9. With regard to the direct appeal issue, the Government points out that "Movant pled guilty under a plea agreement in which he knowingly and voluntarily relinquished his right to appeal his sentence, except upon limited grounds (i.e., if his sentence exceeded the maximum permitted by law; if his sentence was the result of an upward departure and/or variance; or if the United States appealed)." *Id.* at p. 14. The Government also cites to the transcript of the change of plea hearing and explains that Movant "acknowledged to the Court at his change of plea hearing that he knew that he was waiving his general right to appeal." *Id.* at p. 15. According to the Government, "[i]t defies credulity to believe that, moments after this acknowledgement, Movant nonetheless instructed his counsel to appeal." *Id.* Movant also claims that his parents asked counsel several days later to file an appeal on his behalf, but the Government emphasizes that there is no record of this conversation or any evidence to show that

it took place. *Id.*

Attached to the Government's Response are the transcript for the change of plea proceedings [Cv-DE 15-1], the Plea Agreement [Cv-DE 15-2], the Factual Proffer [Cv-DE 15-3], and the transcript of the sentencing proceedings [Cv-DE 15-4].

### III.    EVIDENTIARY HEARING HELD ON APRIL 14, 2021

The first evidentiary hearing was held on April 14, 2021 [DE 31] by Zoom VTC. The United States was represented by AUSA Mark Dispoto, and the Movant, who was present at the hearing, was represented by AFPD Gail Stage.

The Court took judicial notice of Docket Entries 38, 47, 59, and 60 from 18-80195-CR-Cohn, as well as the emails attached to Government's pretrial narrative statement [Cv-DE 28]. The Movant called two witnesses to testify: Ms. Kimela Flint, Movant's mother; and Movant Xavier Davis. The United States called one witness to testify: Gregg Lerman, Esq., Movant's trial counsel in the underlying criminal case. Their testimony is summarized below.

#### a)  Ms. Kimela Flint

Ms. Flint, Movant's mother, was Movant's first witness. Ms. Flint retained Mr. Lerman on Movant's behalf, and neither Ms. Flint nor Movant had a relationship with Mr. Lerman prior to the criminal case underlying the Petition. Ms. Flint spoke with Mr. Lerman quite often both in person and over the phone over the course of his representation about Movant's case. Generally, Mr. Lerman was responsive except for the one time he went on vacation. However, Mr. Lerman did not keep Ms. Flint constantly updated about her son's case.

Movant decided to plead guilty, and Ms. Flint was present during both the change of plea hearing and the sentencing hearing. Ms. Flint did not understand everything that was happening

during the change of plea hearing and the sentencing hearing, and she is not sure if Movant understood everything that was happening either. After Movant was sentenced, Ms. Flint had discussions with him. Movant told his mother that he wanted to appeal his case, and she said she would speak with Mr. Lerman. Ms. Flint spoke with Mr. Lerman at some point after sentencing, and he took no action on filing an appeal. She is not sure exactly when she met with him, but she is sure that she told him her son wanted to file an appeal.

The Court finds Ms. Flint to be credible and credits her testimony. She clearly testified that she did advise Mr. Lerman that her son wanted Mr. Lerman to appeal his case. Although Ms. Flint was unsure of the exact date when she met with Mr. Lerman after Movant's sentencing to discuss the appeal issue, Mr. Lerman later testified that he and Ms. Flint did meet about the appeal issue, and that the meeting was within 14 days of Movant's sentencing. Further, the testimony adduced at the hearing established that the normal course of conduct during the criminal case was that Movant would speak with his mother, Ms. Flint, and she would then speak with Mr. Lerman and relay Movant's messages. Thus, it was the routine practice adopted by Movant, Ms. Flint, and Mr. Lerman that Ms. Flint would routinely relay messages from Movant to his counsel, Mr. Lerman, and that Mr. Lerman would act upon those messages.

b)  <u>Movant Xavier Davis</u>

Movant is 28 years old and a high school graduate with vocational training as an electrician. He has used drugs before, and he last used them on the day of his arrest in the underlying criminal case. He also received mental health counseling in high school for depression.

Mr. Lerman represented Movant for about three months in his federal criminal case. If Movant wanted to communicate with Mr. Lerman, he would call his mother, and she would call

Mr. Lerman. He never directly telephoned Mr. Lerman even though he could have called him from the jail. Movant was held at Broward County Jail during the pendency of the case and did not have email access there. However, once he was moved to FDC Miami approximately two weeks after sentencing, he did have access to email. Mr. Lerman visited Movant in jail approximately five times when Movant's mother asked Mr. Lerman to visit. However, Mr. Lerman never visited Movant in jail after his sentencing. Mr. Lerman was responsive to Movant's requests (through Movant's mother) to speak with him or see him.

Movant recalls discussing the Indictment with Mr. Lerman, discussing possible defenses, seeing the evidence against him, and speaking with Mr. Lerman about how he wanted to resolve the case. Movant recalls the hearing in which he pled guilty and answered Judge Cohn's questions. Judge Cohn asked Movant about the plea agreement and the section regarding the appeal waiver and asked Movant whether he understood what that paragraph meant. Movant said he understood. Judge Cohn asked several questions regarding whether Movant understood everything, and Movant answered in the affirmative. However, he did not actually understand everything that was happening in his case. Movant never told Judge Cohn that he was unhappy with Mr. Lerman's representation.

Movant also remembers speaking with a probation officer regarding his PSI and remembers going over it with Mr. Lerman. He and Mr. Lerman decided to object to part of the PSI, and objections were timely filed.

After speaking with inmates at the Broward County Jail, where Movant was incarcerated prior to his sentencing hearing, Movant decided he wanted to appeal. Movant testified that Mr. Lerman visited him on the day of his sentencing hearing in the Marshal's cellblock in the Fort

Lauderdale Federal Courthouse, immediately *prior* to his sentencing hearing, at which time Movant told Mr. Lerman that he wanted to appeal. During that meeting, according to Movant, Mr. Lerman said that nothing could be done because Movant had waived his right to appeal. Movant thought Mr. Lerman might be right because he was a lawyer. Movant testified that Mr. Lerman did *not* visit him in the Marshal's cellblock in the Fort Lauderdale Federal Courthouse on the day of his sentencing *after* the sentencing hearing. Further, Movant testified that Mr. Lerman never visited him in person, or spoke to him, at any time after his sentencing.

Movant also recalls the sentencing hearing and that he did not receive the sentence he expected. Movant thought he would be sentenced to 7-10 years, yet he actually received a sentence of 150 moths (12.5 years). At the very end of the sentencing hearing, Judge Cohn mentioned that Movant was waiving his right to appeal unless it "deals with a certain amount of time."

After sentencing, Movant was transported back to the Broward County Jail. He spoke with inmates there who prompted him to call his parents. Movant never spoke with Mr. Lerman again after sentencing, so he had no opportunity to tell Mr. Lerman directly that he wanted to file a notice of appeal. If they had spoken, Movant would have told Mr. Lerman to file an appeal. Movant did, however, call his mother before he reached Coleman FCI and tell her he wanted to file an appeal. Movant's mother spoke with Mr. Lerman at least a week after sentencing to tell him to appeal, and Mr. Lerman never filed a notice of appeal.

Movant initially testified that he did not have his mother ask Mr. Lerman to come visit him in jail after sentencing, but he later testified he did ask his mother to ask Mr. Lerman to come see him to discuss filing an appeal. However, Mr. Lerman, for the very first time, did not come.

Movant arrived at Coleman FCI approximately two weeks after sentencing and spoke to

9

inmates there, including the "law man" Donald Green, who was also an inmate. After speaking with Mr. Green, for the first time, Movant believed that Mr. Lerman might have been incorrect and that maybe he could appeal. Movant reached out to his mother for a second time and asked her to instruct Mr. Lerman to file a notice of appeal.

c) <u>Gregg Lerman, Esq.</u>

Mr. Lerman was Movant's trial counsel in the underlying federal criminal case. He has been a licensed attorney since 1985 and was admitted to practice in the Southern District of Florida in approximately 1990. Mr. Lerman's legal practice is about 99% criminal defense work, he has represented over 1,000 clients, and he is a board-certified criminal trial lawyer.

Mr. Lerman filed his notice of appearance in Movant's criminal case in October 2018. He met with Movant, his mother and his father on multiple occasions. Mr. Lerman remembers meeting with Movant's mother and communicating with Movant through her; he does not recall speaking to Movant on the telephone.

During the course of their communications, Movant advised Mr. Lerman that certain robberies with which he had been charged were not committed by him. Movant explained that he was only willing to enter a guilty plea as to certain counts. Mr. Lerman and Movant also discussed the charges and guidelines, Movant's possible defenses, whether Mr. Lerman should try to sever the counts of the Superseding Indictment into separate cases, whether the Movant possessed a firearm in particular cases, and whether the masked person shown in the robberies had any identifiable features.

After Mr. Lerman and AUSA Dispoto conferred, the Government agreed to dismiss the counts for which Movant denied responsibility in exchange for a guilty plea as to other counts.

Prior to March 5, 2019, Movant agreed to plead guilty to several counts in the Superseding Indictment. Mr. Lerman reviewed with Movant the plea agreement he ultimately signed. The plea agreement contained an appellate waiver. Prior to the guilty plea, Mr. Lerman told Movant what the appellate waiver meant. Movant appeared to understand the terms of appellate waiver and the entire plea agreement and stated to the Court that he understood during the change of plea hearing.

Movant's sentencing hearing took place on June 19, 2019. At the hearing, Judge Cohn denied Movant's objections to the PSI but sentenced Movant within the guidelines. Movant was facing a possible mandatory minimum of 25 years. If Mr. Lerman had won on his objections, Movant's guidelines would have been 46-57 months before the added consecutive mandatory minimum (an additional 84 months). In other words, the bottom of the guidelines would have been 133 months. Movant was ultimately sentenced to 150 months in prison. According to Mr. Lerman, he asked for a variance, the Government did not object, and the Court granted the variance.

Between the time of the guilty plea and the sentencing, Mr. Lerman did not have any conversations with Movant or his mother about filing an appeal. In fact, Movant did not raise the appeal issue before, during, or after sentencing. On June 19, 2019, immediately *after* sentencing, Mr. Lerman met with Movant in the holding cell in the Fort Lauderdale Federal Courthouse. Mr. Lerman stated that he signed the visitor's log at the Marshal's cellblock in the Fort Lauderdale Federal Courthouse on June 19, 2019 when he visited Movant immediately *after* Movant's sentencing hearing. He spoke with Movant about his sentence and explained to Movant that there were no issues that Movant could appeal even if he had not agreed to an appeal waiver. More specifically, Mr. Lerman told Movant that he would not be successful on any appeal regardless of the appellate waiver because Judge Cohn departed from the guidelines. Mr. Lerman does not recall

Movant directing him to file a notice of appeal at that time. Mr. Lerman had no further discussion with Movant about an appeal.

However, Mr. Lerman did meet with Movant's mother in his office within the 14-day period after sentencing about Movant's right to appeal. He explained to her that there were no viable issues for appeal, that Movant had waived his right to appeal, and that Movant needed to be satisfied with his sentence. Movant's mother did not ask Mr. Lerman to file a notice of appeal on behalf of Movant. Mr. Lerman had no further conversations with Movant or his family after that. At no time did Movant or anyone in his family specifically ask Mr. Lerman to file a notice of appeal on Movant's behalf. Had someone done so, Mr. Lerman would have filed a notice of appeal and a motion to withdraw. He is well-versed in the Eleventh Circuit case law on this issue and understands that he has no choice but to file an appeal if directed to do so by a client.

Although Mr. Lerman has notes in his file regarding his representation of Movant, Mr. Lerman does not have any written notes about filing or not filing an appeal, discussing the appeal waiver with Movant, or the post-sentencing meeting in the Marshal's cellblock.

### d)   Post-Hearing Evidence Admitted at April 22, 2021 Hearing

In light of Mr. Lerman's testimony that he had visited Movant in the Marshal's cellblock in the Fort Lauderdale Federal Courthouse immediately *after* Movant's sentencing hearing regarding the appeal issue, and his testimony that he had signed the visitor's sign-in log at the Marshal's cellblock when he did so, the Court asked the parties to attempt to obtain the U.S. Marshal's sign-in sheet for the cellblock in the Fort Lauderdale Federal Courthouse for the date of June 19, 2019.

Movant's counsel did file a copy of the sign-in sheet in this case. [Cv-DE 32]. At the April

22, 2021 hearing, the parties stipulated to the admission of the June 19, 2019 sign-in sheet, and it was admitted as Movant's Exhibit 1. Mr. Lerman's signature is not on the Marshal's sign-in sheet for that day.

## IV.   <u>RELEVANT LAW</u>

"In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. Under the 'performance' prong, the defendant must show that counsel's performance 'fell below an objective standard of reasonableness.'" *King v. U.S.*, 250 Fed.Appx. 930, 932 (11th Cir. 2007) (citing *Strickland*, 466 U.S. at 688.) "Under the 'prejudice' prong, the defendant must show that counsel's deficient performance actually prejudiced the defendant and that, "but for the attorney's error, the outcome of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable. *See Strickland,* 466 U.S. at 688. The petitioner must establish that particular and identified acts or omissions of counsel "were outside the wide range of professionally competent assistance." *Chandler v. United States*, 218 F.3d 1305, 1313–14 (11th Cir. 2000) (quoting *Burger v. Kemp,* 483 U.S. 776, 794 (1987); *see also Strickland,* 466 U.S. at 686 (stating that petitioner must show "counsel's representation fell below an objective standard of reasonableness", which means that counsel's performance was unreasonable "under prevailing professional norms ... considering all of the circumstances"). During plea negotiations defendants are "entitled to the effective assistance of competent counsel." *McMann v. Richardson,* 397 U.S. 759, 771 (1970). The *Strickland* standard applies to "challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

A defense attorney's failure to file a direct appeal after being requested to do so by his client results in a *per se* constitutional violation of the movant's Sixth Amendment right to counsel. *Roe v. Flores–Ortega,* 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"). Furthermore, there is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." *Roe v. Flores–Ortega, supra* at 484. A defendant does not need to establish that his direct appeal would have been meritorious, but rather that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise chosen to take. *Id.*

Even if the defendant has contractually waived the right to appeal, defense counsel may be ineffective for failing to filing a notice of appeal when instructed to do so by the defendant; the actual merits of an appeal are not to be considered when determining whether an untimely appeal should be permitted. *Gaston v. United States,* 237 Fed.Appx. 495, 497 (11th Cir. 2007). "[P]rejudice is presumed "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken," and "this final presumption applies even when the defendant has signed an appeal waiver." *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (quoting *Flores-Ortega*, 528 U.S. at 484, 120 S.Ct. 1029). The defendant is similarly not required to show that there were viable grounds for such an appeal. *Martin v. United States,* 81 F.3d 1083 (11 Cir.1996); *Montemoino v. United States,* 68 F.3d 416, 417 (11 Cir. 1995). An "appeal waiver does not relieve counsel of the duty to file a notice of appeal on request." *Patel v. United States*, 252 F. App'x 970, 973 (11th Cir. 2007). In circumstances such as these, determining whether a

14

defendant actually requested that his counsel file an appeal is the "essential first step." *Id.* at 974. "Counsel has a constitutional duty to consult with a defendant about an appeal when: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing." *Thompson v. U.S.*, 504 F.3d 1207 (11th Cir. 2007) (citing *Gomez-Diaz v. U.S.*, 433 F.3d 788, 793 (11th Cir. 2005)).

## V.    <u>DISCUSSION AND ANALYSIS</u>

The Government conceded at the April 22, 2021 hearing that there is a conflict in the testimony and that resolution of this matter comes down to a credibility determination by the Court. The Court agrees and has carefully considered the credibility of the three witnesses in light of all the evidence presented.

### a)   <u>Whether Movant asked Mr. Lerman to file a direct appeal</u>

The first issue for the Court to address is whether Movant asked Mr. Lerman to file a direct appeal. Movant testified at the April 14, 2021 evidentiary hearing that, just ***prior*** to the sentencing hearing on June 19, 2019, he told Mr. Lerman in the Marshal's cellblock at the Fort Lauderdale Federal Courthouse that he wanted to appeal his sentence. Movant's testimony in this regard is suspect for several reasons. First, it conflicts with his initial Affidavit [Cv-DE 14] which he filed to support his argument that he had requested that his counsel file a direct appeal. In that Affidavit, he stated that, immediately ***after*** his sentencing, he asked his trial counsel to appeal his case. *Id.* at p. 2. So, we have Movant testifying that he told Mr. Lerman to appeal immediately ***before*** his sentencing hearing—which conflicts with his Affidavit which states that he told Mr. Lerman to appeal immediately ***after*** his sentencing hearing. Additionally, it makes no sense that a defendant in a criminal case—where he had pled guilty—would ask his attorney to appeal before

his sentencing hearing. It would be more logical for the defendant to wait and hear his sentence, and then decide whether he wanted to appeal. Finally, the Marshal's sign-in log for the day of Movant's sentencing does not reflect a visit by Mr. Lerman to Movant either before or after sentencing on June 19, 2019. So, for all of these reasons, the Court finds that Movant's testimony that he told his attorney to appeal on the day of his sentencing hearing—before his sentencing— lacks credibility. But that does not end the analysis.

Movant's attorney, Mr. Lerman, testified that immediately *after* Movant's sentencing hearing, he visited Movant in the Marshal's cellblock, and he signed the Marshal's sign-in log when he did so. It was at this meeting where, according to Mr. Lerman, he met with Movant and discussed any appellate issues, and Movant did *not* request that Mr. Lerman file an appeal. Like Movant's testimony on this point discussed above, Mr. Lerman's testimony in this regard also has some credibility issues. Although Mr. Lerman is well known and respected in this district—and by this Court—as an excellent and ethical criminal defense attorney, the fact that Mr. Lerman's signature does not appear on the Marshal's sign-in log for June 19, 2019 clearly contradicts his testimony that he visited Movant immediately after sentencing and signed the Marshal's sign-in log when he did so. Further detracting somewhat from Mr. Lerman's credibility on this point is the fact that, despite having extensive notes about his representation of Movant, he has no notes of any meetings with Movant at any time which reflect that he discussed any appellate issues with Movant. Therefore, the Court finds it difficult to credit Mr. Lerman's testimony that he met with Movant on June 19, 2019, immediately after sentencing and discussed the appeal issue with him, and that Movant did not request the filing of a direct appeal.

The Court notes that it is specifically **not** finding that Mr. Lerman's testimony is purposely

16

untruthful, false or evasive in any regard; rather, as a busy criminal defense attorney who represents numerous clients on a daily basis, it is quite possible that Mr. Lerman may be mistaken, confused or not entirely clear as to his discussions with Movant approximately 22 months ago on the appeal issue and as to whether he was requested to file a direct appeal.

However, there does exist a clear conflict between the testimony of Mr. Lerman and Movant, and the Court finds it difficult to fully credit either Movant's or Mr. Lerman's testimony. The testimony of Movant and the testimony of Mr. Lerman are both controverted in certain important respects by the evidence.

That takes us to the testimony of Movant's mother, Ms. Flint, who the Court has found to be credible. The totality of the evidence established that, during the course of the attorney-client relationship, Movant and Mr. Lerman authorized and permitted Ms. Flint to communicate directly with Mr. Lerman on Movant's behalf. In accordance with this procedure, Ms. Flint testified that she told Mr. Lerman in a meeting post-sentencing that Movant wanted to file an appeal. Mr. Lerman remembers meeting with Ms. Flint about the appeal issue within 14 days after sentencing, but he does not recall her requesting an appeal to be filed on Movant's behalf. Again, Mr. Lerman has no notes of this meeting.

After considering the conflicting testimony and evidence, the Court finds that the testimony of Movant and Mr. Lerman is at equipoise; however, the credible testimony of Ms. Flint tips the scale in favor of Movant. The Court finds that Movant, through his mother, Ms. Flint, did timely request that Mr. Lerman file a direct appeal within 14 days of Movant's sentencing. The Court further finds that Movant has met his burden of persuasion by a preponderance of competent evidence on this issue, per *Strickland, supra.*

17

b) <u>Whether, if Movant failed to request that counsel file an appeal, counsel still fulfilled his constitutional duty to advise Movant of the advantages and disadvantages of filing an appeal</u>

Even if Movant did not directly, or through his mother Ms. Flint, request that Mr. Lerman file a direct appeal, defense counsel still had a constitutional duty to advise Movant of the advantages and disadvantages of filing an appeal. According to Movant, Mr. Lerman never met with him or spoke to him again after the sentencing hearing. According to Mr. Lerman, the only time after the sentencing hearing that he met with Movant or spoke to him was in the Marshal's cellblock immediately after sentencing when he also signed the visitor's sign-in log. As discussed above, however, Mr. Lerman's testimony in this regard is controverted by the actual Marshal's sign-in log for June 19, 2019, which does **not** show him signing in to meet with Movant on that date. Further, he has no corroborating notes in his file. In light of the evidence, the Court simply cannot credit Mr. Lerman's testimony on this point.

Accordingly, it is entirely unclear to this Court whether Mr. Lerman fulfilled his constitutional duty of notifying Movant of the advantages and disadvantages of filing an appeal, and then determining clearly whether or not Movant desired to file a direct appeal. Based on the testimony and evidence presented, the Court simply cannot find that Mr. Lerman did fulfill this important constitutional duty. In such a situation, Movant should be provided with the opportunity to file a belated appeal. The Government will not be prejudiced in any way if Movant is permitted to file a belated direct appeal, and conversely, Movant's constitutional right to a direct appeal will be ensured. The Court finds that Movant has met his burden on this point as well.

## VI.   <u>CONCLUSION</u>

In light of the foregoing, the Court finds that Movant has demonstrated by a preponderance

of the evidence that he had an interest in pursuing a direct appeal.[2] The testimony and evidence establishes that Movant hoped for a lower sentence if he prevailed on the objections to the PSI, that Movant received a higher sentence than he had hoped for, that he wanted to appeal his sentence, that he requested through his mother that Mr. Lerman file a notice of appeal, and that his mother did request that Mr. Lerman file a notice of appeal on Movant's behalf. However, no notice of appeal was ever filed.

Additionally, the Court finds by a preponderance of the evidence that Movant may not have been fully and properly advised by defense counsel of the advantages and disadvantages of an appeal, as well as his right to file a notice of appeal regardless of the appeal waiver contained in the plea agreement. In light of the conflicts in the testimony and the evidence, the Court simply cannot find that Movant was fully advised regarding the advantage and disadvantages of filing an appeal and his right to file said appeal despite the existence of an appeal waiver.

Importantly, Mr. Lerman's recollection of a meeting with Movant at the Marshal's cellblock on June 19, 2019 immediately after sentencing could not be corroborated. The attorney sign-in log for the Marshal's cellblock June 19, 2019, did not reflect a sign-in by Mr. Lerman on that date. Nor does Mr. Lerman have any file notes or correspondence to document his conversation with Petitioner regarding appeal.[3] Given all of these facts and the totality of the

---

[2] The Court rejects the Government argument that Movant seemingly withdrew his desire to appeal after Mr. Lerman explained that it would be futile and did not renew his desire for an appeal to be filed until more than 14 days had passed. There is evidence that Ms. Flint asked Mr. Lerman to file a notice of appeal within 14 days. Moreover, Movant was an unsophisticated defendant, and it would not have been proper for defense counsel to convince Movant not to file a notice of appeal if Movant desired to file one.

[3] The undersigned has previously noted that disputes—and perhaps evidentiary hearings—over whether a criminal defendant desired to file a direct appeal could be avoided if a defendant's decision to not file a direct appeal was properly documented by defense counsel. In this regard, when advised by a client in a federal criminal case that the client does not wish to appeal, defense counsel should always endeavor to obtain a signed written directive from the client to that effect or, if unable to do so, to document the attorney's file with notes reflecting the client's decision not

evidence and testimony, the Petition is due to be granted solely as to the direct appeal issue (Ground One). *See Cilla v. United States*, No. 12-CR-60262-KAM, 2016 WL 824591, at *6 (S.D. Fla. Feb. 2, 2016), *report and recommendation adopted,* No. 15-60498-CIV, 2016 WL 836636 (S.D. Fla. Mar. 2, 2016); *Aparicio v. United States*, No. 08–60471–CIV, 2009 WL 2257806 (S.D. Fla. July 29, 2009). Movant has met his burden under *Strickland* solely as to Ground One.

## VII.    <u>RECOMMENDATION TO THE DISTRICT JUDGE</u>

The undersigned Magistrate Judge respectfully recommends that the Honorable District Judge **GRANT** Xavier Davis' Final Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2255 solely as to Ground One regarding the direct appeal issue, and re-impose the same sentence as previously imposed, thereby providing Movant with 14 days in which to file a direct appeal.

If such relief permitting Movant's belated appeal is granted, it is further respectfully recommended that the District Judge deem the other Grounds raised in the Movant's pending Petition to be moot, and that the remainder of the Movant's pending Petition be DENIED without prejudice to Movant's ability to timely raise them in a subsequent § 2255 Petition, if desired by Movant, after the conclusion of his direct appeal. This procedure would likely promote judicial and attorney economy.

## <u>NOTICE OF RIGHT TO OBJECT</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States

---

to appeal and then follow up with a confirmatory letter or other correspondence to the client. *See Cilla*, 2016 WL 824591, at *6. Had this been done in this case, the result may well be different.

District Judge James I. Cohn. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 4th day of May, 2021.

WILLIAM MATTHEWMAN
United States Magistrate Judge

21